486 P.2d 1008

STATE of Idaho, Plaintiff-Respondent,

v.

Charles (Charley) CUTLER, Defendant-Appellant.

No. 10336.

Supreme Court of Idaho.

July 7, 1971.

James E. Hunt, Sandpoint, for defendant-appellant.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, and Everett D. Hofmeister, Jr., Pros. Atty., Sandpoint, for plaintiff-respondent.

SHEPARD, Justice.

This case is an appeal from the second trial of the defendant wherein he was found guilty of the charge of manslaughter. The charge resulted from an automobile accident with the defendant driving one of the involved cars. The information charged defendant with manslaughter and alleged four separate violations of law: (1) that he was driving under the influence of intoxicating beverages; (2) that he was driving at a speed in excess of the posted limits; (3) that he was driving at a speed greater than was reasonable and prudent; and (4) that he was driving on the wrong side of the road. Upon that information, trial was conducted on February 19, 1968, with a resulting verdict of guilty without gross negligence. The court, upon the request of defendant, submitted interrogatories to the jury in answer to which the jury indicated its findings to be based only on No. (3) above. The trial court then granted a new trial on the grounds of a lack of showing of proximate cause. At the second trial a lack of proof on the issue of speed prompted the judge to remove that issue from the jury. The defendant requested that interrogatories be submitted to the jury at the second trial, but such request was refused. The second trial resulted in a verdict of guilty without gross negligence. Defendant appeals from the judgment based on that verdict. We affirm.

Appellant first contends that the trial court erred in refusing to grant defendant's motion for dismissal at the conclusion of the State's case because the State had failed to prove the corpus delicti and that the court further erred in permitting the State to (or, as appellant characterizes it, in urging and suggesting that the State) reopen its case for the purpose of producing further proof on the issue of corpus delicti.

A plea of not guilty puts in issue every material allegation of the indictment. I.C. § 19–1715; State v. Golden, 67 Idaho 497, 186 P.2d 485 (1947); State v. Rankin, 56 Idaho 64, 50 P.2d 3 (1935); State v. McBride, 33 Idaho 124, 190 P. 247 (1920). One of the material allegations placed in issue by a plea of not guilty is that of the corpus delicti of the crime. State v. Pullos, 76 Idaho 369, 283 P.2d 590 (1955); State v. Sullivan, 34 Idaho 68, 199 P. 647 (1921); State v. McClurg, 50 Idaho 762, 300 P. 898 (1931); State v. McLennan, 40 Idaho 286, 231 P. 718 (1925).

In a homicide or related case the corpus delicti can be said to consist of two elements, each of which must be present. The first is that of a death, more specifically the death of the person named in the charge as dying or being dead. The second element is that the death was by the criminal action or means of the defendant, hence the delicti. Perkins, Criminal Law, 2d Edition, page 100 (1969); State v. Darrah, 60 Idaho 479, 92 P.2d 143 (1939); State v. Pullos, supra. The prosecution has the burden of proof of the corpus de-

licti. State v. Rankin, supra; State v. Pullos, supra; Perkins, supra.

An examination of the facts as disclosed by the record show that the defendant Cutler was involved in an automobile accident on a highway approximately two miles west of Clark Fork, Idaho. The deceased, one Billy Gibson, had been on a date with a young lady and had returned her to her home approximately 30 minutes before the time of the accident. The driving time between the young lady's home and the place of the accident was approximately 30 minutes. Physical evidence existing at the scene of the accident established beyond question that a collision had taken place between the car driven by Cutler and the car driven by Gibson. Gibson was alone in his car and was found dead in the car shortly after the time of the accident. While neither Cutler nor his two passengers made any attempt to examine the Gibson automobile, two other persons examined the car and Gibson shortly after the accident and both stated their belief that he was then dead. Gibson was pronounced dead at the time of the arrival of an ambulance and received no medical attention. The coroner testified that he concluded that Gibson had died from massive injuries to the head and the side, that there was a massive accidental trauma to his body, multiple fractures and head injuries, and that the injuries were visible externally and upon a gross examination. The coroner further testified that he had submitted a death certificate stating that the cause of death was due to massive accidental trauma as a result of an automobile vehicle collision.

The requirement of proof of corpus delicti by circumstantial evidence in Idaho was high in the earlier Idaho cases. See State v. Sullivan, 34 Idaho 68, 199 P. 647 (1921); State v. Brassfield, 40 Idaho 203, 232 P. 1 (1925); State v. McClurg, supra. However, in State v. Vanek, 59 Idaho 514, 84 P.2d 567 (1938), the court re-examined *Brassfield* and *Sullivan*, and stated:

"Where proof of the corpus delicti is made by circumstantial evidence, 'it must be sufficient to satisfy the understanding and conscience of the jury beyond a reasonable doubt.' * * * (N)o greater proof is required to establish the corpus delicti than is required to establish any other essential element of the crime * * *."

See also State v. Barr, 63 Idaho 59, 117 P.2d 282 (1941); State v. Kombol, 81 Idaho 530, 347 P.2d 117 (1959); State v. Johnston, 62 Idaho 601, 113 P.2d 809 (1941).

It is clear that direct proof of death in an automobile homicide case is not necessary and that circumstantial evidence is sufficient. It is also clear however that circumstantial evidence or proof must be such as would satisfy reasonable men beyond a reasonable doubt. In such case a jury question is presented unless the court, as a matter of law, should direct a finding. See State v. Medicine Bull, 152 Mont. 34, 445 P.2d 916 (1968); Stafford v. People, 154 Colo. 113, 388 P.2d 774 (1964); State v. Gross, 237 Or. 71, 390 P.2d 612 (1964).

The evidence, although circumstantial, tending to prove the corpus delicti in the case at bar was such that the jury could have found that the State had established the corpus delicti beyond a reasonable doubt. This is not to say that such issue was established by the State beyond all possible doubt. At the close of the State's case it had sustained its burden of proof. The record does not disclose any attempt in the defendant's case to cast any doubt on the State's evidence of corpus delicti.

The appellant herein assigns error in the action of the trial court following the defendant's motion for dismissal at the conclusion of the State's case. Although the record is not completely clear at this point, appellant contends that the trial court, of its own motion, permitted the State to reopen its case on the issue of corpus delicti and permitted additional

proof thereon through the testimony of the coroner. It is within the discretion of the trial court to allow a party to reopen its case after it has rested and that decision will not be disturbed upon appeal unless there is a manifest abuse of such discretion. Lucas v. United States, 343 F.2d 1 (8th Cir. 1965); State v. Cassady, 67 Ariz. 48, 190 P.2d 501 (1948). Such action may be taken by the court on motion of a party or on the court's own motion. County of Bonner v. Dyer, 92 Idaho 699, 448 P.2d 986 (1968). The defendant herein had the full opportunity to meet any additional evidence presented upon the reopening of the case. It is unlikely that the additional evidence was of such a nature as to require additional time to prepare a defense and in any event no continuance was requested. As was well stated in the case of State v. Burbank, 156 Me. 269, 163 A.2d 639 (1960), a somewhat parallel case to the case at bar:

> "A justice presiding in a criminal case not only has the responsibility of protecting the rights of one accused of crime but also an equal responsibility to the people of the State to the end that justice is not thwarted by mistake or inadvertence. The presiding Justice under the circumstances of this case was well within his rights and his discretionary powers of trial procedure in permitting the State to reopen and present further evidence after the respondent's motion for a directed verdict of not guilty had been made." 163 A.2d 639, 643–644.

■ The defendant contends that the trial court erred in refusing to grant his motion for a mistrial because of a newspaper article appearing during the time of trial. The record discloses that said newspaper article only recited in a factual manner that the case was being tried, the crime the defendant was accused of committing and the fact that he had been tried once before on the same charge. There is no showing as to how the mere recitation of the facts in the newspaper article in a non-flamboyant, non-prejudicial, but rather objective, fashion could have prejudiced the rights of the defendant to a fair trial. The standards set forth both by this Court and the United States Supreme Court regarding prejudicial publicity which necessitates new trials are in no way met by the facts contained in the record herein. Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); State v. Scroggins, 91 Idaho 847, 433 P.2d 117 (1967); State v. Polson, 92 Idaho 615, 448 P.2d 229 (1968).

■ Appellant assigns error in the refusal of the trial court to submit special interrogatories to the jury as requested by the defendant. In the case of State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958), the court had for consideration a case remarkably similar to that presently at bar. Therein it was stated:

> "The practice of requiring the jury to answer special interrogatories, or to render a special verdict, in criminal cases is not to be encouraged, except in cases contemplated by § 19–2304, I.C." 80 Idaho 296, 310, 328 P.2d 1065, 1074.

The record does not disclose the existence of circumstances bringing the present case within the purview of I.C. § 19–2304, and therefore the refusal of the trial court to submit special interrogatories to the jury was not error.

■ Appellant next assigns error in the trial court's refusal to suppress evidence relative to the results of a blood test. Appellant admits that while he was at the hospital approximately four hours after the accident, he was approached by a police officer and asked to submit to a blood alcohol test. He consented thereto and such a test was made. The results thereof were introduced at trial. However, the alcohol content shown by such test was not of a level great enough to bring into play the presumption of intoxication set forth by our then existing statutes. I.C. § 49–1102; I.C. § 49–352.

The testimony of the police officer indicated that he had seen beer, several beer caps, and bottle and can openers in the Cutler vehicle during his investigation of the accident scene. At the time appellant was approached by the investigating officer in the hospital he had been given medication, however, he was conscious and reasonably alert at the time of the request.

Appellant argues that no reasonable ground existed for the officer to believe that Cutler had been operating his vehicle while under the influence of intoxicants. He further argues that the defendant was not advised of his constitutional rights under the theories advanced by *Miranda, Escobedo* and *Schmerber* rulings.

We hold that the officer requesting the appellant to submit to the blood alcohol test on the basis of the record had reasonable grounds to so request the test. The United States Supreme Court in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), dealt extensively with the constitutional protections afforded an accused when a result of a blood alcohol test sample is sought to be introduced in evidence at trial. That court rejected the contentions that a blood alcohol test violates the Fifth Amendment privilege that no person shall be compelled to be a witness against himself. *Schmerber* draws the distinction between evidence of a testimonial or communicative nature as contrasted with "real" evidence. See also State v. Bock, supra, and State v. Ayres, 70 Idaho 18, 211 P.2d 142 (1949).

In *Schmerber* the defendant upon the advice of counsel, refused to submit to the blood test and such was taken by the police officers over the objection of the defendant. In Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), cited extensively in *Schmerber*, the appellant was unconscious at the time that the blood was withdrawn. In *Schmerber* the court stated:

"Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds." (Footnote omitted) 384 U.S. 757, 765, 86 S.Ct. 1826, 1833.

That court also disposed of the claims of violation of the privilege to counsel as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), and the claim of search and seizure in violation of the privilege contained in the Fourth Amendment.

▇▇▇ The appellant also claims error in a lack of proof of the chain of possession of the blood drawn from his body prior to the time that the chemical test was actually made thereon. There is no evidence in the record to indicate the slightest inference of any irregularity or tampering with the blood sample. See State v. McFarland, 88 Idaho 527, 401 P.2d 824 (1965); State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960); State v. Webb, 76 Idaho 162, 279 P.2d 634 (1955).

We have examined the contention of the defendant that there was error in the measurement of the blood sample and find it to be without merit.

▇▇▇ Appellant also assigns error in the trial court permitting a witness to state his opinion as an "expert" while at the same time refusing to admit the testimony of a different witness as to his opinion as an "expert." The admissibility of opinion testimony, even non-expert, and its competency, is largely discretionary with the trial court and the determination of its weight is largely a matter for the jury. Bean v. Diamond Alkali Co., 93 Idaho 32, 454 P.2d 69 (1969); Davis v. Nelson-Deppe, Inc., 91 Idaho 463, 424 P.2d 733 (1967); State ex

rel. Burns v. Blair, 91 Idaho 137, 417 P.2d 217 (1966); Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1961).

These and appellant's remaining assignments of error have been examined and the discretion of the trial court was not abused by his rulings thereon and we find such assignments to be without merit.

Judgment of the trial court is affirmed.

McQUADE, C. J., and McFADDEN, DONALDSON and SPEAR, JJ., concur.