648 P.2d 1135

STATE of Idaho, Plaintiff-Appellant,

v.

Orval Edward HUGGINS, Jr., Defendant-Respondent.

No. 13512.

Court of Appeals of Idaho.

May 13, 1982.

Rehearing Denied Aug. 3, 1982.

**424**

David H. Leroy, Atty. Gen., Myrna Stahman, Deputy Atty. Gen., James F. Kile, Sp. Deputy Atty. Gen., Boise, for plaintiff-appellant.

Bert L. Osborn of Welch & Osborn, Payette, for defendant-respondent.

SWANSTROM, Judge.

Orval Edward Huggins, Jr. was on trial for assault with intent to commit rape. At the close of the state's case Huggins moved to dismiss, urging, as one of his grounds, that the information failed to *allege* that Huggins and the complainant were not married at the time of the alleged assault. On the ground that the state failed to *prove* absence of marriage, the trial court granted the motion and the state moved, unsuccessfully, to reopen its case. The state appealed the order dismissing the information. We affirm the order.

Initially, in its brief, the state raised three issues: (1) Was it reversible error of the trial court to conclude as a matter of law that sufficient evidence had not been presented by the state in its case-in-chief? (2) Was it reversible error to deny the state's request to reopen its case-in-chief after a motion to dismiss had been granted? (3) Would the constitutional protections involving double jeopardy prevent a retrial of Huggins on this charge, if the order of dismissal was set aside?

In its initial brief, the state did not argue that the trial court committed error in ruling the state had the burden, in its case-in-chief, to prove the absence of marriage between Huggins and complainant. The argument in this brief focused on the sufficiency of the state's evidence showing a lack of marriage. Prior to oral argument, the state filed a supplemental brief. In that supplement, and in its oral argument on the first issue, the state contended that the amendments to I.C. § 18–6101 in 1977 eliminated, as an element of the crime of rape to be proven by the state, the absence of a marital relationship between the prosecutrix and the defendant. No new or additional authorities were cited by the state in support of this position, but because we believe this contention is reasonably included within the first issue stated, we will address it, in spite of the apparent shift in the state's position during this appeal. See I.A.R. 35(3).

In *State v. Jeanoes*, 36 Idaho 810, 213 P. 1017 (1923), the court stated:

> There is no question but that the absence of the marital relation is a necessary ingredient in the crime of rape. It must be alleged and proved. However, the absence of the relation may be proved by facts and circumstances from which the conclusion can be drawn. Direct and positive evidence is not necessary.

36 Idaho at 811–812, 213 P. at 1018.

In the present case, the trial court noted that Idaho law was amended in 1977 to permit a man to be convicted of the rape of his spouse in certain circumstances, and concluded it was no longer necessary for the information to allege the non-marriage. However, the court ruled it was necessary for the state to prove in its case-in-chief the absence of a marriage. The trial court held that the state's evidence was insufficient to prove Huggins and complainant were not married. On that ground the court granted the motion to dismiss.

▇ We believe the trial court was correct in placing the burden upon the state to *prove* the absence of a marriage. Moreover, for the reasons hereafter discussed, we also hold that it is still a requirement in Idaho that the state must *allege* in the

information either the absence of a marriage, or that the particular offense charged comes within one of the spousal exceptions contained in I.C. § 18–6107.[1]

■ In Idaho, the crime of "assault with intent to commit rape" (I.C. § 18–907) is a lesser included offense of rape and, in prosecuting such an assault, the state must prove all elements of rape except penetration. *State v. Garney*, 45 Idaho 768, 772, 265 P. 668, 669 (1928); *State v. Neil*, 13 Idaho 539, 548, 90 P. 860, 862 (1907). Before 1977, I.C. § 18–6101 defined rape as "an act of sexual intercourse accomplished with a female *not the wife of the perpetrator....*" [Emphasis added.] In 1977 the Idaho legislature amended I.C. § 18–6101 by striking the language underlined above. In the same legislation a new section, I.C. § 18–6107, was enacted. It provides:

No person shall be convicted of rape for any act or acts with that person's spouse, except as provided hereafter:

1. A spouse has initiated legal proceedings for divorce or legal separation; or
2. The spouses have voluntarily been living apart for one hundred eighty (180) days or more.

Thus the legislature merely removed the language "not the wife of the perpetrator" from I.C. § 18–6101, substituted comparable exclusionary language in I.C. § 18–6107, and provided for two exceptions. Apart from the two exceptions, the elements of rape were not changed in any way by these amendments.

We deem the language "no person shall be convicted of rape for any act or acts with that person's spouse" to be an integral part of the definition of the crime of rape. We do not consider the fact that the legislature removed comparable language from I.C. § 18–6101 and substituted the quoted language in I.C. § 18–6107 as indicating any legislative intent to shift the burden of proof nor does it indicate to us an intent to eliminate an element from the crime of rape. The element, lack of marriage, is still present, with the two enumerated exceptions.

We see little reason for this court to depart from the rule in *Jeanoes*. The burden imposed upon the state by the *Jeanoes* rule is not onerous. The proof of the marital relationship, or lack thereof, is generally a simple matter, with sufficient proof readily available to the state. The existence of a marriage is not within the exclusive knowledge of the defendant. The prosecutrix has this knowledge. Usually she need only be asked a question or two to supply this proof. By requiring the state simply to do that, rather than requiring the defendant to raise the marriage issue, a potential problem of shifting the burden of going forward with evidence can be avoided.

Our analysis is similar to that of the Supreme Court in *State v. Segovia*, 93 Idaho 208, 457 P.2d 905 (1969). In that case the defendant was charged with unlawful possession of narcotic drugs. An issue on appeal was whether the state had to allege and to prove the defendant did not have a valid prescription for the drugs. The court noted the repeal of a statute that formerly had made it a burden of the defendant, rather than of the state, to prove an exception or exemption contained in the drug laws pertaining to narcotics. The court said:

In the absence of a statute, the general rule is that the burden is upon the state in a criminal case to negative any exception or proviso appearing in that part of the statute which defines the crime if the exception is "so incorporated with the language describing and defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted * * *." 41 Am.Jur.2d, Indictments and Informations, § 98, pp. 940–941. Under such circumstances, the state must aver in the information and prove at trial that the defendant is not within the exception to the statute. [Citations omitted.]

93 Idaho at 210, 457 P.2d at 907.

The court's reasoning in *Segovia*, concerning the general rule on burden of proof,

---

1. The state has not suggested that either of the spousal exceptions would apply in this case.

is consistent with the *Jeanoes* rule requiring the state, in a rape case, to allege and to prove the absence of a marriage. We hold that the trial judge was correct in ruling that the state had the burden to prove complainant and Huggins were not married.

We now turn to whether the state failed to produce sufficient evidence in its case-in-chief to establish that complainant and Huggins were not married at the time of the incident. At the outset we note that the trial court's order dismissing the prosecution, regardless of terminology, was essentially a judgment of acquittal pursuant to Idaho Criminal Rule 29. *See State v. Holder*, 100 Idaho 129, 130, 594 P.2d 639, 640 (1979). Rule 29 provides for a motion for judgment of acquittal as a substitute for the former motion for a directed verdict.[2] A directed verdict was available to a defendant as a carry-over from the adoption in Idaho of the common law of England. I.C. § 73–116. *See State v. Grow*, 93 Idaho 588, 591, 468 P.2d 320, 323 (1970). The change to a judgment of acquittal is purely one of nomenclature, although it is no longer necessary for the jury to be directed to return a verdict of acquittal. The court now simply enters the appropriate judgment. The name is not important. Where a defendant's motion challenging the sufficiency of the state's evidence is mistakenly designated as a "motion to dismiss" or as a "motion for a directed verdict," the court should treat it as a motion for judgment of acquittal under I.C.R. 29. *State v. Holder, supra.*

We believe the appropriate test to be applied by a trial court in ruling on a I.C.R. 29 motion is "whether the evidence is sufficient to sustain a conviction of the offense or offenses charged." *Id.*, 100 Idaho at 131, 594 P.2d at 641. *See also State v. Greene*, 100 Idaho 464, 465, 600 P.2d 140, 141 (1979); *State v. Lewis*, 96 Idaho 743, 748, 536 P.2d 738, 743 (1975). We note that the test set forth in *Holder* is seemingly at

odds with some of the language used in *State v. Vargas*, 100 Idaho 658, 659, 603 P.2d 992, 993 (1979), wherein the court said: "A motion for judgment of acquittal [under I.C.R. 29(a)] must be granted only when there is no evidence upon which to base a verdict of guilt. Therefore, such directed verdicts are limited to cases involving total lack of inculpatory evidence." However, the court went on to say "there is abundant, competent, and substantial evidence in the record to support a conviction of the offenses charged." *Id.* Thus, the result in Vargas was not at odds with the substantial evidence rule stated in *Holder*.

We note that *Holder* is in line with the majority of courts which have dealt with the similar federal criminal rule 29. *See* 2 C. Wright, Federal Practice and Procedure § 467 (1969). Moreover the rule in *Holder* is consistent with the well established test for determining the sufficiency of the evidence to sustain a criminal conviction, that is, a jury verdict will not be disturbed on appeal where there is substantial and competent evidence to support it. *State v. Horn*, 101 Idaho 192, 197, 610 P.2d 551, 556 (1980). In *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977), our Supreme Court said:

> In making our review [of the sufficiency of the evidence] we are required to give full consideration to the right of the jury to determine the credibility of witnesses, the weight to be afforded evidence, as well as the right to draw all justifiable inferences from the evidence before them. But, at the same time, judicial review requires that we peruse that evidence to determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. Here our concern is with the element of felonious intent, and if the evidence is such that reasonable jurors must necessarily have a reasonable doubt as to the proof of that element, we can not allow the verdict to stand. This has come

---

**2.** This has been the rule in Idaho since adoption of rules of criminal practice and procedure, effective January 1, 1972.

to be known as the "substantial evidence rule."

96 Idaho at 740, 572 P.2d at 174.

■ From our analysis of the Idaho cases we believe the test for deciding a motion for judgment of acquittal under I.C.R. 29 is as follows: The trial judge must review the evidence in the light most favorable to the state, recognizing that full consideration must be given to the right of the jury to determine the credibility of witnesses, the weight to be afforded evidence, as well as the right to draw all justifiable inferences from the evidence. *See State v. Greene,* 100 Idaho 464, 600 P.2d 140, (1979); *State v. Lewis,* 96 Idaho 743, 536 P.2d 738 (1975). Viewed in this manner, where the inculpatory evidence presented as to any essential element of the crime is so insubstantial that jurors could not help but have a reasonable doubt as to the proof of that element, a judgment of acquittal should be entered.[3]

■ Applying this test to the present case we hold that the evidence concerning absence of marriage was so insubstantial that the jurors necessarily would have had a reasonable doubt. The state never did ask complainant about her marital status. The jury was left to inferences arising from her testimony which related only indirectly to her marital status. Her testimony showed that she was seventeen years old and living with her two children. Her older child was by her former husband, whom she named. Her younger child, then four months old, was by Huggins. Complainant testified that she went by her former married name and that Huggins "used" her while he gave respect to his girl friends. Upon this evidence, we conclude that the trial court correctly dismissed the case for failure by the state to prove lack of the marriage.

■ The state contends that the trial court erred in refusing to allow the prosecutor to reopen his case. In refusing to allow the case to be reopened, the trial judge indicated his belief that he had no discretion in a criminal action to allow the state to reopen. This is contrary to the law in Idaho. In *State v. Cutler,* 94 Idaho 295, 486 P.2d 1008 (1971), the trial court, on its own motion, allowed the state to reopen its case to put in additional evidence while the defendant's motion for dismissal at the conclusion of the state's case was pending. On appeal, the Supreme Court held that "[i]t is within the discretion of the trial court to allow a party to reopen its case after it has rested and that decision will not be disturbed upon appeal unless there is a manifest abuse of such discretion." 94 Idaho at 298, 486 P.2d at 1011. In the present case the trial court erred in refusing to use its discretion in determining whether to allow the prosecution to reopen.

■ Before a case is reopened, some reasonable excuse—such as oversight, inability to produce or ignorance of the existence of the evidence—must be established by the moving party. *Smith v. Smith,* 95 Idaho 477, 481, 511 P.2d 294, 298 (1973). In the present case, the prosecutor argued to the court that proof of the lack of marital relationship was not necessary, because the charge involved was not rape, but assault with intent to commit rape. This argument indicates the prosecutor's misunderstanding of the elements he needed to prove. When the court ruled against him on this point and granted the motion to dismiss, the prosecutor moved to reopen in order to supply the missing proof. In *Cutler,* the court quoted from *State v. Burbank,* 156 Me. 269, 163 A.2d 639 (1960) where the Maine court said: "A justice presiding in a criminal case not only has the responsibility of protecting the rights of one accused of crime but also an equal responsibility to the people of the State to the end that justice is not thwarted by mistake or inadvertence." 94 Idaho at 298, 486 P.2d at 1111. The court took a recess to consider the motion to dismiss before ruling. Therefore, a timely motion

---

3. Idaho Code § 19–2123 provides for an "advisory instruction to acquit." A discussion of this provision, in connection with I.C.R. 29, is contained in our recent opinion in *State v. Elison-*

*do.* 103 Idaho 69, 644 P.2d 992 (Ct.App. 1982). *See also State v. Grow,* 93 Idaho 588, 468 P.2d 320 (1970).

**428**

to reopen in this case could have been made and granted, in the court's discretion.

We hold the state's failure to make the motion to reopen its case before the court granted Huggins' motion to dismiss was critical. As we noted earlier, the trial judge's order was a "judgment of acquittal." It terminated the proceedings because the evidence was not sufficient to sustain a conviction. This was a factual determination made by the court, equivalent to a jury verdict of "not guilty." In such a situation the double jeopardy clauses of the Idaho and United States constitutions bar a retrial of Huggins on the charge. *State v. Lewis*, 96 Idaho 743, 750, 536 P.2d 738, 745 (1975).

The state contends that the case of *Stockwell v. State*, 98 Idaho 797, 573 P.2d 116 (1979) mandates a reversal. However, the *Stockwell* holding, allowing the prosecution to reopen where no delay in the proceedings would ensue, is specifically made applicable only to preliminary hearings where "substantial rights are not finally determined, but merely preliminarily examined." 98 Idaho at 802, 573 P.2d at 121.

There is some question here as to whether the judge's decision to grant a judgment of acquittal was immutable at the time the state sought to reopen its case. We do not rule out the possibility of a judge correcting or changing such a ruling before the jury is discharged. However, that issue is not before us. The judge did make his decision to acquit Huggins, and discharged the jury. That judgment was carried out and it has long since been irreversible. Accordingly, we affirm.

WALTERS, C. J., and BURNETT, J., concur.

## ON PETITION FOR REHEARING.

### SWANSTROM, Judge.

In our initial opinion we held that the state in a prosecution for rape or assault with intent to commit rape, has the burden of alleging and proving either (a) the absence of a marriage between the defendant and the alleged victim or (b) the presence of special circumstances delineated by statute under which a husband may be prosecuted for the actual or attempted rape of his wife. The state has petitioned for rehearing, contending that we did not utilize the appropriate rules of statutory construction in arriving at this conclusion. The state has filed an extensive brief in support of the petition, and we deem argument upon rehearing to be unnecessary.

The state contends that where, as here, an "exception" to a crime is contained in a statute separate from the statute defining the crime, and there is no reference in the definitional statute to the exceptions contained in the separate statute, the exception is an affirmative defense which the defendant has the burden of proving. *See Commonwealth v. Hart*, 11 Cush. (Mass.) 130 (1853); Anno. 153 A.L.R. 1218 (1944). We disagree and hold the application of such a rule is not appropriate here.

A basic rule of statutory construction is to give effect to the legislature's intent in passing a statute. *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980). In doing so, a court should construe all sections of applicable statutes together to determine the legislative intent. *Magnuson v. Idaho State Tax Comm.*, 97 Idaho 917, 556 P.2d 1197 (1976).

Our Supreme Court in *State v. Jeanoes*, 36 Idaho 810, 213 P. 1017 (1923), placed the burden on the state of alleging and proving the absence of a marriage between an accused and a victim in a rape prosecution. The legislative history of the current statutory scheme, I.C. §§ 18–6101 through 6107, and the legislature's stated purpose in amending the previous statutes persuade us that the legislature did not intend to change the *Jeanoes* rule when it amended I.C. § 18–6101 in 1977. The 1977 amendment merely removes the "absence of a marriage" provision contained in old I.C. § 18–6101 and places a similar provision in new I.C. § 18–6107 with two qualifications. Two companion statutes were adopted at

the same time: Idaho Code § 18–6105 limits a defendant's ability to introduce evidence of the prosecutrix's prior sexual conduct in a rape prosecution. Idaho Code § 18–6106 provides that a person convicted of rape can be required to pay restitution to the victim.

■ The legislative statement of purpose, in regard to the above changes, said: "[t]he purpose of this measure is to expand and supplement the existing sexual assault laws in Idaho." *See* Statement of Purpose to Senate Bill 1263 (1977).[1] The legislature did not express any intent to overrule the *Jeanoes* decision. If that was the purpose, it could easily have been stated. Shifting the burden to a defendant of proving the absence of an element of a crime should not be lightly inferred. In our examination of this legislative act we do not find the purpose of shifting to the defendant the burden of proving the absence of a marital relationship between the defendant and the victim.

Idaho Code Section 18–6107 presently provides that "[n]o person shall be convicted of rape for any act or acts with that person's spouse, except...." This is an affirmative statement of policy by the Idaho Legislature forbidding the conviction of a spouse for acts, which would be rape absent the marital relationship, unless one of the two enumerated exceptions in the statute is present. The statute does not merely establish a defense to the crime; it narrows the definition of the crime itself.

For the above reasons, we confirm our holding that the above-quoted provision contained in I.C. § 18–6107 is an integral part of the definition of the crime of rape. The state has the burden of alleging and proving, either the absence of a marital relationship between the defendant and the victim, or alleging and proving one of the enumerated statutory exceptions which allow the prosecution of a husband for the rape of his wife. *See* 41 Am.Jur.2d *Indictments and Informations* § 98, pp. 940–41 (1968 & Supp.1981) for a collection of cases on this subject.

The petition for rehearing is denied.

WALTERS, C. J., and BURNETT, J., concur.

1. Statements of purpose, along with a statement of financial impact, are introduced with each bill in either the House or Senate. These legislative statements of purpose are available at the state law library. This particular bill made its way through both the House of Representatives and Senate without any amendments indicating a change in the legislative purpose. *See* House Journal, 44th Leg., 1st Sess. 1977, pp. 176, 217, 234, 287. Under these circumstances a statement of purpose is entitled to some weight in determining legislative intent.